# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BRIAN K. TIDMORE, #429998,       * 
    SID #1774564

                                *

Petitioner

                                *

v                                Civil Action No. RDB-16-3473

                                *

WARDEN WOLFE and
THE ATTORNEY GENERAL OF THE     *
STATE OF MARYLAND

                                *

Respondents

                             ***

## MEMORANDUM OPINION

Pending is Brian K. Tidmore's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, challenging his 2014 judgment of conviction by way of a not guilty plea on an agreed statement of facts pursuant to which he was convicted in the Circuit Court for Wicomico County, Maryland. Specifically, he was found guilty of possession of cocaine with the intent to distribute as a volume dealer, possession of cocaine with the intent to distribute, and possession of cocaine. Respondents filed an Answer (ECF 5), to which Tidmore filed a Reply. (ECF 6).

The case is briefed and ready for disposition. After considering the pleadings, exhibits, and applicable law, this Court finds a hearing unnecessary. *See* Local Rule 105.6 (D. Md. 2016); Rule 8, *Rules Governing Section 2254 Proceedings in the United States District Courts*; *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner is not entitled to a hearing under 28 U.S.C. §2254(e)(2)). The Court will DENY AND DISMISS the Petition with prejudice.

## PETITIONER'S CLAIMS

Tidmore presents interrelated and overlapping claims for relief which can be summarized as follows: (1) the trial court erred in failing to dismiss his charges due to a violation of the Interstate Agreement on Detainers (IAD); (2) the trial court erred by failing to dismiss his charges due to a violation of his Sixth Amendment right to a speedy trial; and (3) the warden of the prison in Georgia where he was incarcerated violated his Fourteenth Amendment Due Process rights by failing to have his IAD paperwork delivered to the Circuit Court for Wicomico County. (ECF 1 at 7, 9-11).

## BACKGROUND AND PROCEDURAL HISTORY

On March 2, 2007, Tidmore was the sole occupant of a vehicle that was stopped for a traffic violation in Salisbury, Maryland. A K-9 dog assisted in detecting a bag in the car that contained approximately 500 grams of cocaine. *See* Agreed Statement of Facts, Trans. (ECF 5-6 at 47, 51) On March 26, 2007, a Wicomico County grand jury returned an indictment charging Tidmore with volume possession of cocaine with intent to distribute and possession of cocaine. (ECF 1 at 5-1 at 8).

Tidmore's trial was scheduled to begin on July 10, 2007. When Tidmore failed to appear, the trial date was continued to August 24, 2007. Tidmore again failed to appear. (ECF 1 at 5-1 at 9-10; ECF 5-2, 5-3).

Tidmore absconded to Georgia where he was arrested, convicted on narcotics charges unrelated to the ones he was facing in Maryland, and sentenced to ten years of incarceration by a Georgia state court. He was released on parole in May of 2014. (ECF 5-9 at 2-3).

On July 1, 2010, Tidmore's attorney filed a Motion for a Speedy Trial in his Maryland case. ECF 1 at 5-1 at 10; ECF 5-5 at 23. Shortly after, the State's Attorney's Office for Wicomico County lodged a detainer against Tidmore in Georgia.

On September 14, 2010, Tidmore signed a waiver of extradition and forms requesting to stand trial in Maryland. The forms were sent to the Wicomico County Sheriff's Department and the District of Attorney of Wicomico County. (ECF 5-6 at 9-16).

Tidmore was released on parole from his Georgia conviction on May 7, 2014. (ECF 5-6 at 8). He was transported to Maryland on May 11, 2014. *Id.*

## I. 2014 PROCEEDINGS IN THE CIRCUIT COURT FOR WICOMICO COUNTY

Upon his return to Maryland, Tidmore moved to dismiss the indictments, asserting violations of the Interstate Agreement on Detainers ("IAD") and his right to a speedy trial. (ECF 5-5, 5-6). Tidmore testified at the two-day motions hearing conducted on August 1 and 4, 2014, that once he learned of the Maryland detainer, he informed his Georgia case manager of his desire to return to Maryland to stand trial. Tidmore testified he signed the relevant forms in Georgia on September 14, 2010, and was given documentation about three days later showing that the warden sent the forms to the Wicomico County Sheriff's Office and the county "District Attorney" in Wicomico County. (ECF 5-6 at 9-16). Tidmore's testimony was supported by a letter from the warden at the Georgia prison as well as a U.S. Postal Service "green card" that confirmed the mailing. (ECF 5-6 at 27). Tidmore could not remember whether the paperwork was sent to the Circuit Court for Wicomico County. *Id.* Tidmore testified that he inquired "constantly" about returning to Maryland, and his Georgia case workers called "Wicomico County" on "multiple occasions." *Id.* at 18.

3

At the end of the hearing, the trial court denied Tidmore's Motion to Dismiss, finding he had not complied with the notice requirements of Md. Correctional Services Art. 8-405(b). The trial judge stated:

> Correctional Services Section 8-405(b)... states the written notice and request for final disposition required under subsection A of this section shall be given or sent by the prisoner to the Warden, Commissioner of Corrections or other official having custody of the prisoner, who shall promptly forward it, together with the certificate, to the appropriate prosecuting official *and the court* by registered or certified mail, return receipt requested.
>
> ************
>
> It's undisputed that nothing was sent to the Court in this case. The Statute is plain on its face, and there is a good purpose for that. There is a salutary purpose of that statute by requiring it [request for trial documents] to go to Court because if it's not sent to the State's Attorney at least the Court is aware of the situation and the Court can invoke the Defendant's right to a speedy trial.

(ECF 5-6 at 36) (emphasis added).

On August 4, 2014, Tidmore pleaded not guilty to an agreed statement of facts after which the Court found him guilty and sentenced him to 20 years of incarceration with all but seven years suspended. The sentence includes a mandatory minimum of five years. (ECF 5-6 at 58; ECF 1 at 1.).[1]

## II. DIRECT APPEAL

Tidmore raised two questions on direct appealed to the Court of Special Appeals of Maryland:

1. Did the circuit court err in denying appellant's Motion to Dismiss due to a violation of the Interstate Agreement on Detainers when, while detained in Georgia in 2010, he provided written notice of his request for final disposition in this case that was sent by the warden in Georgia to the State's Attorney's Office for Wicomico County?

---

[1] Tidmore is presently housed at Eastern Pre-Release Unit in Church Hill, Maryland. *See* http://www.dpscs. state. md.us/inmate (last viewed April 2, 2018).

2. Did the circuit court err in denying appellant's Motion to Dismiss due to a violation of his Sixth Amendment right to a speedy trial when the State's Attorney's Office for Wicomico County had notice in September, 2010 of appellant's waiver of extradition and desire to be tried in Maryland but failed to take any action in the case until May, 2014?

(ECF 5-9).

On August 11, 2015, the Court of Special Appeals affirmed Tidmore's convictions in an unreported opinion. *Tidmore v. Maryland*, CSA No. 1451, September Term; *see also* ECF 5-9. Tidmore filed a Petition for a Writ of Certiorari in the Court of Appeals of Maryland requesting further review which the Court of Appeals of Maryland denied on October 19, 2015. (ECF 5-10 at 30).

## III.   PETITION FOR POST CONVICTION RELIEF

On December 23, 2015, Tidmore filed a Petition for Post-Conviction Relief, raising a claim of ineffective assistance of counsel. (ECF 1 at 5; ECF 5-1 at 14). On July 29, 2016, Tidmore was granted post-conviction relief in the form of permission to file a Belated Motion for Modification of Sentence. (ECF 5-1 at 15). All other claims in Tidmore's Post-Conviction Petition were withdrawn with prejudice. *Id.* Tidmore filed a Motion for Modification in the Circuit Court for Wicomico County on October 3, 2016, which that Court denied on July 25, 2017. *See* http://casesearch.courts.state.md.us/casesearch/inquiry (last viewed March 27, 2018).

## STANDARD OF REVIEW

The federal habeas statute at 28 U.S.C § 2254 states that a district court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The statute sets forth a "highly deferential standard for evaluating state-court rulings." *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7 (1997); *see also Bell v. Cone,* 543 U.S. 447, 853 (2005). This standard is "difficult to meet," and requires federal courts to give state-court decisions the benefit of the doubt. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotation marks and citations omitted). A state prisoner must show that a state court ruling on a claim presented in federal court was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter,* 562 U.S. 86, 103 (2011).

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state adjudication is "contrary to" clearly established federal law under § 2254(d)(1) where the state court "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]." *Williams v. Taylor,* 529 U.S. 362, 405 (2000). Under the "unreasonable application analysis," a "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington,* 562 U.S. at 101 (quoting *Yarborough. v Alvarado,* 541 U.S. 652, 664 (2004)). In other words, "a federal habeas court may not issue the writ simply because [it] concludes in its independent

judgment that the relevant state-court decision applied established federal law erroneously or incorrectly." *Renico v. Lett,* 559 U.S. 766, 773 (2010).

Under section 2254(d)(2), "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen,* 558 U.S. 290, 301 (2010). "[E]ven if reasonable minds reviewing the record might disagree about the finding in question," a federal court may not conclude that the state court decision was based on an unreasonable determination of the facts. *Id.*

Further, "a determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Nicolas v. Attorney Gen. of Md.,* 820 F.3d 124, 129 (4th Cir. 2016). "Where the state court conducted an evidentiary hearing and explained its reasoning with some care, it should be particularly difficult to establish clear and convincing evidence of error on the state court's part." *Sharpe v. Bell,* 593 F.3d 372, 378 (4th Cir. 2010). This is especially true where the state court has "resolved issues like witness credibility, which are 'factual determinations' for purposes of Section 2254(e)(1)." *Id.*

## DISCUSSSION

When undertaking an evaluation of §§ 2254(d)(1) and (2), where the Court of Appeals of Maryland has summarily denied a request for further review of the Court of Special Appeals' determination, a federal habeas court must "look through" the summary decision to the last reasoned decision. *Brumfield v. Cain,* ___U.S. ____, 135 S. Ct. 2269, 2276 (2015) (citations omitted). The last reasoned opinion on the claims Tidmore presents here was issued by the Court of Special Appeals of Maryland on direct review.

## I. CLAIM OF TRIAL COURT ERROR FOR DENYING MOTION TO DISMISS FOR SPEEDY TRIAL VIOLATION

The Sixth Amendment guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This guarantee is applied to the states by the Due Process Clause of the Fourteenth Amendment. *Klopfer v. North Carolina,* 386 U.S. 213, 222-23 (1967). To prove a Sixth Amendment right to a speedy trial violation, a petitioner "must show first that the Amendment's protections have been triggered by arrest, indictment, or other official accusation." *United States v. Woolfolk,* 399 F.3d 590, 597 (4th Cir. 2005) (citations omitted). If Sixth Amendment protections are triggered, a court must consider whether dismissal is warranted based on the totality of the circumstances, paying particular attention to the four factors identified by the Supreme Court in *Barker v. Wingo,* 407 U.S. 514, 530 (1972). Those factors are: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530; *accord Woolfolk,* 399 F.3d at 597.

The first inquiry is also a threshold requirement, because "[s]imply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Doggett v. United States,* 505 U.S. 647, 651–652 (1992). After a defendant meets this threshold requirement, he "must ... show on balance," that the four inquiries weigh in his favor. *Woolfolk,* 399 F.3d 597, quoting *United States v. Thomas,* 55 F.3d 144, 148 (1995). Ultimately, none of the four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Barker,* 407 U.S. at 533. In undertaking this analysis, this Court is mindful "that the accused's interest in a speedy trial is specifically affirmed in the Constitution." *Id.*

## A. OPINION OF THE COURT OF SPECIAL APPEALS

Tidmore's claim that he is entitled to federal habeas relief because his Sixth Amendment right to a speedy trial was denied and rejected by the Court of Special Appeals of Maryland in an opinion that states in relevant part:

> At the outset, we consider whether the post-arrest, pre-adjudication delay was of sufficient length to be presumptively prejudicial so as to trigger an analysis of the *Barker* factors. *See Ratchford v. State*, 141 Md. App. 354, 358-59 (2001). This initial *Barker* factor "is actually a double enquiry." *Doggett v. United States,* 505 U.S. 647, 651 (1992). The Court continued in *Doggett*:
>
> > Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay . . . since, by definition, he cannot complain that the government has denied him a "speedy trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.
>
> *Doggett v. United States*, 505 U.S. at 651-52. *See State v. Bailey*, 319 Md. at 410 (unless delay presumptively prejudicial, no further need to inquire into other *Barker* factors) (citation omitted).
>
> The length of delay for speedy trial analysis is measured from the earlier of the date of arrest or filing of indictment or other formal charges to the date of trial. *United States v. Marion,* 404 U.S. 307, 320-21 (1971); *Divver [v. State]*, 356 Md. [379] at 388-89. Appellant was arrested on March 2, 2007, and his trial commenced on August 1, 2014. This interval in excess of seven years and five months triggers the *Barker* analysis. *See Divver, supra*, 356 Md. at 389.
>
> Because appellant has made out a case for presumptive prejudice on the basis of the overall delay from arrest to trial, we must consider "as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim," along with the other *Barker* factors. *Doggett*, 505 U.S. at 652. The "presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652.

(ECF 5-9 at 12-15) (bracketed alterations added).

9

The Court of Special Appeals' opinion next outlined the chronology of events between Tidmore's arrest and conviction in Maryland.

**March 2, 2007.** Tidmore is arrested and charged.

**March 4, 2007.** Tidmore is released on a surety bond.

**March 26, 2007.** Tidmore is indicted.

**July 10, 2007.** Tidmore fails to appear for trial. Case is continued.

**August 24, 2007.** Tidmore fails to appear a second time for trial.

**Post-August, 2007.** Tidmore is arrested in Georgia, convicted and sentenced to ten years of imprisonment.

**June 30, 2010.** Tidmore's counsel files a demand for speedy trial.

**July 15, 2010.** Tidmore's counsel moves to dismiss of the charges for violating the right to a speedy trial.

**September 14, 2010.** Tidmore signs forms requesting disposition of his Maryland charges.

**May 11, 2014.** After his parole in Georgia, Tidmore returns to Wicomico County.

**August 1, 2014.** The trial court denies Tidmore's Motion to Dismiss and convicts him after a trial on a not guilty agreed statement of facts.

(ECF 5-9 at 15-16).

The Court of Special Appeals continued its analysis by examining the reasons for the delays, noting that *Barker,* 407 U.S. at 531, instructs:

[c]losely related to the length of delay is the reason the [State] assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

(ECF 5-9 at16).

Against this background, the Court of Special Appeals determined the period from March

2, to the initial trial date on July 10, 2007, as "neutral," because Maryland law permits

reasonable time for normal trial preparation and the time spent in pre-trial preparation is neutral

and not charged to either the State or the defendant. (ECF 5-9 at 16-17). Turning to the next

time periods, the Court of Special Appeals opinion states:

### July 10, 2007 - September 14, 2010

This interval of three years and two months is taxed heavily against appellant.
Appellant failed to appear for trial, both for the initial trial date and the
subsequent date in August, 2007, and absconded from Maryland. *See generally,*
*Powell v. State*, 56 Md. App. 351, 363-65 (1983). "While it is true that a
defendant is not under any obligation to take affirmative steps to ensure that he
will be tried in a timely fashion, a court need not ignore a defendant's fugitivity in
considering whether there has been a violation of his sixth amendment right to a
speedy trial." *Rayborn v. Scully*, 858 F.2d 84, 90 (2nd Cir. 1988) (citation
omitted). "[L]aw enforcement officials are not expected to make heroic efforts to
apprehend a defendant who is purposefully avoiding apprehension or who has
fled to parts unknown. *Id.*

### September 14, 2010 - May 11, 2014

This delay of nearly three years and eight months is taxed against the State,
although not heavily. We do not find that the State acted in bad faith, or that it
sought to impair the defense. As noted by the *Barker* Court, "[a] more neutral
reason such as negligence . . .should be weighted less heavily but nevertheless
should be considered [against the prosecution]. *Barker*, 407 U.S. at 531. Further,
appellant has offered nothing to suggest that the [State] acted intentionally in
causing this delay." *United States v. Arceo*, 535 F.3d 679, 685 (7th Cir. 2008)
(portion of delay – four years and eight months, attributable to government
negligence but not weighed heavily).

### May 11, 2014 to August 1, 2014

This interval is neutral. With appellant's return to Maryland, the parties would be
permitted a period for pre-trial preparation. *See Ferrell v. State*, 61 Md. App. at
463.

11

Next, the Court of Special Appeals considered the third *Barker* factor, assertion of the

right to a Speedy Trial, stating:

> We accord little, if any, weight in favor of appellant for this factor. He
> emphasizes that he asserted his right to a speedy trial in 2007 and then in July,
> 2010. Because he absconded from Maryland in 2007 and failed to appear for
> trial, appellant has waived any reliance on his early pro forma demand for a
> speedy trial. *See United States v. DeTienne*, 468 F.2d 151, 156 (7th Cir. 1972).
> Although appellant's counsel, who was still the attorney of record during this
> entire period because his appearance had never been stricken, demanded a speedy
> trial and moved to dismiss in 2010 for a violation of that right, the record belies
> appellant's claim that he continuously asserted his right to a speedy trial.

(ECF 5-9 at 18-19).

Lastly, the Court of Special Appeals addressed the fourth *Barker* factor: whether there

was prejudice as a result of the delay.

> Given that the overall delay of over seven years is presumptively prejudicial, the
> inquiry then becomes whether, considering all of the *Barker* factors, appellant is
> obligated to demonstrate actual prejudice at the fourth stage. On this record, we
> conclude that he does.

> We are mindful that the delay between arrest and trial constitutes a considerable
> period of time. Some courts have considered a post-indictment delay of five years
> insufficient to relieve a defendant of the burden of showing actual prejudice. *See
> United States v. Serna-Villarreal*, 352 F.3d 225, 232 (5th Cir. 2003) (noting that
> Fifth Circuit "and others generally have found presumed prejudice only in cases
> in which the post-indictment delay lasted at least five years."). In *United States v.
> Banks,* 761 F.3d 1163, 1183 (10th Cir.), *cert. denied*, 135 S.Ct. 308 (2014), the
> Tenth Circuit noted that "in cases of extreme delay, the defendant may rely on the
> presumption of prejudice and need not present any specific evidence of
> prejudice." The Tenth Circuit further noted, however, that "[g]enerally, the court
> requires a delay of six years before allowing the delay itself to constitute
> prejudice." *Id.* (citation omitted). Many courts relieve a defendant of the
> obligation to prove actual prejudice with an interval that is far less. *See, e.g.,
> United States v. Ferreira*, 665 F.3d 701, 707 (6th Cir. 2011) (three years).

> On the record before us, we conclude that appellant is required to establish actual
> prejudice. Although the total interval exceeds seven years, slightly over three
> years of the delay were caused by appellant's flight from Maryland to avoid trial.
> This weighs heavily against appellant, and, serves as a counterweight to the
> State's negligence, which lies at the heart of the delay between September 2010

12

and trial. The next question is whether appellant has, in fact, demonstrated actual prejudice.

In the case at bar, appellant claimed that his witnesses were unavailable:

> They're gone. I've lost contact with them, I don't know where they are. I'm sure people moved on with their lives. But I wasn't able to keep in contact with anyone, it was difficult being so far away in the situation that I was in.

On cross-examination, appellant insisted that he had "secured" his witnesses:

> [STATE:] So there was a period of time where you weren't in the State of Maryland, you didn't do anything to preserve your witnesses or evidence for trial?
>
> A. Incorrect.
>
> Q. There was not a lapse in time between when you absconded and you got picked up in the State of Georgia while you were on the run from Maryland authorities?
>
> A. Yes, but I continued to secure my witnesses at that time because I had fully intended to come to trial.
>
> Q. At your own leisure you were going to come to trial?

Appellant continued to assert that he had witnesses and had a "strong defense:"

> Witnesses included. I had a very strong defense. I was very confident that I would be acquitted of the charges against me because I had witnesses that would have given testimony that would have clearly explained the situation and my involvement in the situation and I'm sure I would have gone home.

(ECF 5-9 at 17-22).

*Barker* holds that prejudice should be weighed with respect to the three interests that the right to a speedy trial was designed to preserve: preventing oppressive pretrial incarceration; minimizing the anxiety and concern of the accused; and limiting the possibility that the defense will be impaired. *Barker*, 407 U.S. at 532 (footnote omitted). Of these, the most serious is the last, because the inability to adequately mount a defense skews the fairness of the entire system.

If witnesses die or become unavailable due to a delay, the prejudice is obvious. *Id.* With this in mind, the Court of Special Appeals next considered whether Tidmore's defense was impaired by delay. (ECF 5-9 at 22). [2]

The Court of Special Appeals, like the Circuit Court, was unpersuaded Tidmore suffered actual prejudice. The Court of Special Appeals emphasized "there was no showing that specific witnesses were unavailable." *Id.* at 22. Further, "although appellant failed to appear twice for trial, his counsel presumably had been ready to proceed with a defense as of July 10, 2007, the first trial date. Given that appellant fled the area, leaving his witnesses behind, his complaint rings hollow." (ECF 5-9 at 17-22). In so finding, the Court of Special Appeals referenced Fourth, Sixth and Tenth Circuit precedent requiring more than generally stated assertions of harm to demonstrate prejudice. *See United States v. Hall,* 551 F.3d 257, 273 (4th Cir. 2009) (indicating Defendant argued prejudice without identifying any unavailable witnesses or exculpatory evidence lost or rendered unavailable as a result of delay); *United States v. Margheim,* 770 F. 3d 1312, 1331 (10th Cir. 2014), *cert. denied,* 135 S. Ct. 1514 (2015) (looking with disfavor on "hazy descriptions of prejudice" and requiring a showing of definite prejudice and the specific manner missing witnesses would have aided the defense); *Norris v. Schotten,* 146 F.3d 314, 328 (6th Cir. 1998) ("The only manner in which appellant has claimed his defense was impaired was his alleged inability to call witnesses. However, appellant does not explain how the alleged prolonged detention affected his ability to call these witnesses").

After examining each *Barker* factor, the Court of Special Appeals continued:

> Weighing all of the *Barker* factors, we conclude that the seven year and five month delay in bringing appellant to trial did not abridge his rights to a speedy

---

[2] Tidmore was not in pretrial detention prior to his first scheduled trial and does not assert that his pretrial detention after he returned to Maryland from Georgia was oppressive. In this Petition, Tidmore does not allege suffering anxiety or concern as a result of delay.

trial. The delay certainly triggers the *Barker* inquiry, but as Judge Greene noted for the Court of Appeals, "of the four factors we weigh in determining whether [the defendant's] right to a speedy trial has been violated, '[t]he length of delay, in and of itself, is not a weighty factor. *Kanneh,* 403 Md. at 689 (quoting *Glover,* 368 Md. at 225).

We shall credit, with minimal weight, appellant for asserting his right to a speedy trial in 2010, but will not accord any credit for his initial speedy trial demand prior to his decision to avoid going to trial and absconding. Although counsel remained in the case, there was no activity during the remainder of the pre-trial period, other than appellant's filling out the IAD forms. The weight to accord appellant on this factor is de minimis.

We view the reasons for the delay overall to be neutral. The periods between arrest and the first trial date, and the interval between the date of appellant's return to Maryland and the actual trial date, are neutral and comprise a total of approximately seven months. The period between the first trial date and the time appellant actually executed his forms for transfer to Maryland under the IAD is taxed heavily against appellant. This interval consists of three years and two months. The period, amounting to nearly three years and eight months between appellant's assertion of his IAD rights and his return to Maryland, is taxed lightly against the State.

Finally, the fact that appellant has not substantiated any claim of prejudice weighs against him. Certainly, extensive incarceration may be presumed to be prejudicial[.] *Wheeler v. State,* 88 Md. App. 512, 524 (1991). To be sure, the delay that is attributed to the State's negligence is significant. This is certainly balanced by the extensive delay caused by appellant's failure to appear for trial and travel to Georgia. In the final analysis, even accounting for the initial presumed prejudice resulting from the overall delay, we are unable to conclude on this record that appellant's speedy trial rights were violated.

(ECF 5-9 at 24-25).

## B. ANALYSIS

In light of the above, it is clear that Court of Special Appeals identified controlling Supreme Court precedent, determined the delays presumptively prejudicial to Tidmore, and proceeded to conduct a *Barker* analysis that considered the totality of the circumstances and applied the four *Barker* factors. The analysis apportioned each delay to the State, to Tidmore, or found it neutral. The period after Tidmore became a fugitive, the time between his first trial date

and his execution of forms requesting transfer to Maryland under the IAD, was taxed heavily against him. This interval consisted of three years and two months. The period, amounting to nearly three years and eight months between Tidmore's assertion of his IAD rights and his return to Maryland, was taxed against the State due to its negligence, albeit "not heavily." ECF 5-9 at 17, 25. "[D]eliberate ... delay" on the part of the state is "weighted heavily against the government," a "more neutral reason such as negligence" is "weighted less heavily but nevertheless should be considered," and a "valid reason" justifies the delay. *Barker*, 407 U.S. at 531. Other delays were determined neutral. Also weighing into this equation was the determination that Tidmore identified no witnesses, evidence, or other actual harm resulting from the delay that prejudiced his defense, and that he was responsible for the initial delay by absconding. Accounting for the presumed prejudice resulting from this lengthy cumulative delay, the Court of Special Appeals determined that there was no speedy trial violation.

The facts on which the Court of Special Appeals applied the *Barker* analysis are supported in the record, and are presumed correct on federal habeas review. Moreover, Tidmore presents no facts to surmount his burden of rebutting the presumption of their correctness by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). The state's decision was not contrary to Supreme Court precedent.

Having reviewed the record in light of the deferential standard of review applicable to 28 U.S.C. § 2254 proceedings, this Court concludes that the State court's decision did not involve an unreasonable application of federal law or an unreasonable determination of the facts. Accordingly, federal habeas relief will be denied as to this claim.

## II. CLAIM OF TRIAL COURT ERROR FOR DENYING THE MOTION TO DISMISS FOR FAILURE TO COMPLY WITH IAD

Tidmore claims that the trial court improperly denied his Motion to Dismiss for failure to comply with the 180-day time limit in the IAD.[3] (ECF 1). The United States Court of Appeals for the Fourth Circuit has held that a violation of the IAD speedy trial provision is not cognizable on habeas review without "evidence indicating that [petitioner] has suffered any prejudice in his incarceration or in defending against the charges against him." *Kerr v. Finkbeiner*, 757 F.2d 604, 606–07 (4th Cir. 1985) ("Specifically, we hold that the violation of the 180-day time provision of Article III(a) alleged in this case does not constitute a fundamental defect entitling Kerr to relief under § 2254, because Kerr has failed to show any prejudice arising out of the alleged violation."). This claim is not cognizable on federal habeas review.

The IAD "is a compact entered into by 48 states, the United States, and the District of Columbia to establish procedures for resolution of one State's outstanding charges against a prisoner of another State." *New York v. Hill*, 528 U.S. 110, 111 (2000); *see also* 18 U.S.C App. 2 § 2. The Compact "is designed 'to encourage the expeditious and orderly disposition of...charges'" and "prescribes procedures by which a member State may obtain for trial a prisoner incarcerated in another member jurisdiction and by which the prisoner may demand the speedy disposition of certain charges pending against him in another jurisdiction." *United States v. Mauro*, 436 U.S. 340, 343 (1978) (citation omitted). Maryland is a party to the compact, Md.

---

[3] Md. Code. Correctional Serv. Art. § 8–405(b) codifies Article III of the IAD. It provides in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, the prisoner shall be brought to trial within 180 days after the prisoner shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of the prisoner's imprisonment and the prisoner's request for a final disposition to be made of the indictment, information, or complaint....

Code. Correctional Serv. Art. §§ 8–401 to 8–417, as is the State of Georgia, GA Code Ann. §42-6-20. Interpreting the IAD presents a question of federal law. *New York v. Hill*, 528 U.S. 110, 111 (2000).

The IAD "enables a participating State to gain custody of a prisoner incarcerated in another jurisdiction, in order to try him on criminal charges[,]" *Reed v. Farley*, 512 U.S. 339, 341 (1994), and "gives a prisoner incarcerated in one State the right to demand the speedy disposition of any untried indictment, information or complaint that is the basis of a detainer lodged against him by another State[.]" *Carchman v. Nash*, 473 U.S. 716, 718–19 (1985) (internal quotation marks and citation omitted).

Even assuming *arguendo* that Tidmore had established that Maryland had the obligation under the IAD to bring him to trial within 180 days, Tidmore does not show that he suffered prejudice during this period. His summary claim "the Maryland detainer prevented me from having specific jobs and institutional privileges, and opportunities for programs and transitional housing"[4] and he was prevented from having the opportunity to have his Maryland and Georgia sentences run concurrently is speculative and unsupported. (ECF 1 at 11). More importantly, Tidmore's missed opportunities for prison programming are not evidence that his defense was actually prejudiced as a result of the delay.

Further, even if Tidmore's claim were cognizable, the Court of Special Appeals' determination that the 180 day period did not begin until Tidmore's IAD forms were received by the trial court comports with federal law.[5] In denying Tidmore's claim, the Court of Special

---

[4] Inmates have no constitutionally protected right to prison jobs, educational access or rehabilitation progress while incarcerated. *Altizer v. Paderick*, 569 F.2d 812, 813 (4th Cir. 1978); *see also Burrell v. Sowers*, No. PJM-09-1038, 2012 WL 628506, at *13 (D. Md. Feb. 24, 2012) (collecting cases).

[5] In *Bush v. Muncy*, 659 F.2d 402, 411 (4th Cir. 1981), the United States Court of Appeals for the Fourth Circuit stated that, under the Supremacy Clause, "no party state has the power either in conjunction with or independently

Appeals relied specifically on a "supplemental provision" of the IAD enacted by Maryland (but absent from the federal version) to conclude that "actual receipt" by the court was necessary to trigger the 180-day period in the IAD.[6] In light of this provision, the Court of Special Appeals affirmed the trial court's finding that the court did not receive actual notice of the IAD request, observing "that the failure to effect actual notice forecloses appellant's claim that the trial court erred by denying his motion to dismiss based on a violation of the Interstate Agreement on Detainers." (ECF 5-9 at 8).

The state court ruling is consistent with federal law. In *Fex v. Michigan*, the Supreme Court held that for purposes of determining the date a prisoner initiates his IAD request, the date on which the request was actually delivered to the prosecutor and court of jurisdiction governs, not the date that the prisoner transmitted his IAD request to the court and to prison authorities. *Fex v. Michigan*, 507 U.S. 43, 52 (1993) ("[T]he 180-day time period in Article III(a) of the IAD does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and prosecuting officer of the jurisdiction that lodged the detainer against him"). Because the Court of Special Appeals' conclusion is consistent with *Fex*, that state court ruling survives scrutiny and federal habeas relief will be denied.

---

of its entry into the [IAD] to alter in any substantial way any of its provisions governing the intended operation of the IAD between party states."

[6] Correctional Services §8-416 provides:

As to any request by an individual confined in another party state for trial in this State, written notice may not be deemed to have been delivered to the prosecuting officer and the appropriate court of this State in accordance with § 8-405(a) (Article III(a) of the Agreement) of this subtitle and notification may not be deemed to have been given in accordance with § 8-405(d) or § 8-406(b) of this subtitle (Article III(d) and Article IV(b) of the Agreement) until the notice or notification is *actually received* by the appropriate court and the appropriate State's Attorney of this State, the State's Attorney's deputy or assistant, or any other person empowered to receive mail on behalf of the State's Attorney.

(ECF 5-9 at 8)(emphasis added).

## III.  CLAIM THAT THE WARDEN OF THE GEORGIA PRISON VIOLATED TIDMORE'S DUE PROCESS RIGHTS

Tidmore claims that his Fourteenth Amendment Due Process rights were violated by the Warden of the Georgia Prison for failing to ensure his IAD paperwork was filed with the Circuit Court for Wicomico County. (ECF 1). Respondents argue this claim is not cognizable under §2254. This Court finds this claim unavailing. First, Tidmore did not demonstrate to the trial court that the Warden failed to send the IAD papers to the Circuit Court for Wicomico County, only that there was no evidence the papers had actually been received. (ECF 5-6 at 27) (Tidmore could not remember whether the paperwork was sent to the Circuit Court for Wicomico County). Further, the purported failure of the Warden in Georgia to take a particular action is peripheral to the validity his state proceedings in Maryland, does not render his current incarceration under a Maryland conviction unconstitutional, and of import here, did not cause prejudice. *See Kerr*, 757 F.2d at 607. Accordingly, this claim provides no grounds for federal habeas relief, and will dismissed.[7]

### CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this burden, an applicant must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). Tidmore has failed to make a substantial showing that he was denied a constitutional right, and this Court finds that reasonable

---

[7]  The record does not reflect this issue was raised in state court. Respondents, however, do not assert lack of exhaustion or procedural default as defenses.

jurists would not find the denial of habeas relief in this case debatable. Accordingly, a Certificate of Appealability shall not issue.

## CONCLUSION

For these reasons, the Petition for Writ of Habeas Corpus will be DENIED AND DISMSSED with prejudice in a separate Order which follows.

April 11, 2018

RICHARD D. BENNETT
UNITED STATES DISTRICT JUDGE